(May 1, 1911.)

## FRANK A. RIOS, Respondent, v. ANTONE AZCUENAGA et al., Appellants.

[115 Pac. 922.]

SUFFICIENCY OF EVIDENCE—INSTRUCTIONS AND MEASURE OF DAMAGES.

(Syllabus by the court.)

1. Evidence in this case examined, and *held* sufficient to support the verdict and judgment.

2. *Held,* that the action in this case was for breach of contract to supply the plaintiff with water sufficient for the irrigation of his

crops, and that the action was not one for injury or damages to growing crops.

3. Instruction given in this case considered, and *held* that it substantially stated the law applicable to such case.

APPEAL from the District Court of the Seventh Judicial District, in and for the County of Canyon. Hon. Ed. L. Bryan, Judge.

Action for damages. Judgment for plaintiff, and defendants appealed. *Affirmed.*

Rice, Thompson & Buckner, for Appellants.

The evidence in this case shows that immediately before the time the dam was washed out there was a general thaw in the vicinity of the dam, followed by a very unusual rain; which caused the waters in the stream to rise and wash out a great number of dams in that section of the country.

"No liability attaches for damages sustained by reason of an act of God or forces of nature." (*Lamb v. Licey*, 16 Ida. 664, 102 Pac. 378.)

"A party subject to breach of contract is bound to make reasonable effort to reduce his damages as far as practicable, and if, through his fault, the damages are unnecessarily increased, the increased loss must fall on him." (*Vicksburg & M. R. R. Co. v. Ragsdale*, 46 Miss. 458; *Oliver v. Hawley*, 5 Neb. 439; *Hamilton v. McPherson*, 28 N. Y. 72, 84 Am. Dec. 330; *Warren v. Stoddart*, 105 U. S. 224, 26 L. ed. 1117; 13 Current Law, 1180, and cases cited in note 51.)

J. A. Elston, for Respondent.

Where the evidence is sufficient to support the verdict, or there is a material or substantial conflict in the evidence, judgment will not be reversed. (*Gumaer v. White Pine Lumber Co.*, 11 Ida. 591, 83 Pac. 771; *Hansen v. Haley*, 11 Ida. 278, 81 Pac. 935; *McKissick v. O. S. L. Ry. Co.*, 13 Ida. 195, 89 Pac. 629; *Vollmer Clearwater Co. v. Rogers*, 13 Ida. 564, 92 Pac. 579; *Spaulding v. Coeur d'Alene R. R. & Irr. Co.*, 5 Ida. 528, 51 Pac. 408.)

"Where a party engages unconditionally by express con-tract to do an act, performance is not excused by inevitable accident, or other unforeseen contingency not within his con-trol." (*Harmony v. Bingham,* 12 N. Y. 99, 62 Am. Dec. 142; *Beebe v. Johnson,* 19 Wend. 500, 32 Am. Dec. 518; *Chester v. Jumel,* 125 N. Y. 237, 26 N. E. 297; *Jones v. United States,* 96 U. S. 24, 24 L. ed. 644.)

AILSHIE, Presiding J.—On the 23d day of October, 1907, the appellants and respondent entered into a contract whereby appellants sold to respondent "a perpetual water right of 140 miner's inches of water under a four-inch pressure, and one-half mile of ditch that will carry said water to the southwest corner of" the land described therein. It was further pro-vided in the contract that the appellants should build and construct a dam fifteen feet high "to supply said water for the water right" sold and transferred. The contract also contained the following paragraph: "It is agreed by the parties of the second part," who are the appellants in this case, "that if the dam should break or be washed out, they will rebuild the same."

The dam was built and constructed, and about January, 1909, it was washed out and destroyed. Respondent immedi-ately notified appellants of the destruction of the dam, and requested them to rebuild the same in order to supply him with water for the coming irrigation season. Appellants em-ployed a man to rebuild the dam, and the contractor took his supplies and went on the ground and commenced the work. The contractor testifies in part as follows:

"I went down there and commenced to plow the dirt where we were supposed to put it in and fill up the gap, but had to quit. We could not get in with the horses, the horses mired down. Then we went up on the hillside and tried to plow, but we could not do anything, neither plow nor scrape, so we had to quit. I stayed there for two days. After the two days were up, I sent a man up to town. He wanted to go up. I told him if he should meet Gus Azcuenaga to tell him to come out, I wanted to talk with him. . . . . When we commenced

to plow on the hillside we could not do anything; I could not do nothing; it wasn't pay enough to make a living by; that is, we could not work it to feed our teams. That was the reason we quit; we could not work it to feed our teams. Could not do enough work to do any good. Mr. Azcuenaga didn't come, and we couldn't talk over the matter of pay. In trying to move this dirt that was soft, the first thing we done caving the bank down from the washout, what was left of it, so we could drive down with the team to scrape the dirt. It took some part of the time. Then we commenced to plow after that. The team mired down and we used some sage-brush to keep them out of the mud, but we could not make any headway with it, and we finally had to give it up; that was all there was to it. . . . . I was to get 25 cents per yard for it. After I could not work in the dirt work what I was supposed to take in, I tried to go up on the hillside; I didn't know it was all rock at that time I started, then I found it was all rock and I couldn't do it. I could not afford to move that ground for 25 cents a yard, because it was all rock. That is why I wanted to see Mr. Azcuenaga to tell him I could not afford to move that ground for 25 cents a yard. Probably if I had been paid the proper price per yard to move that ground, I would have gone on and completed the work; I am not sure.''

The dam was not constructed, and so no water was collected for the season of 1909, and respondent was not supplied with water for the irrigation of his crops for that year. He broke and prepared about sixty acres of land, and seeded about twenty-five acres. He got a good stand of barley and wheat, but was not able to mature any crop for the reason that he had no water and the crop burned up before maturing. He thereafter commenced this action to recover damages for the failure of the appellants to comply with the terms of their contract, and supply him with water or to construct the dam and keep it in condition to collect the water in order to supply him for the irrigation of his lands. The case was tried to a jury, and a verdict was returned and judgment was thereupon entered in favor of the respondent herein and against

the appellants for the sum of $648. This is an appeal from the judgment and an order denying a motion for a new trial.

Many errors have been assigned, but we shall not deal with them separately or in detail. We shall only refer specifically to such as seem to require special attention.

In the first place, it is contended that the evidence is insufficient to justify the verdict. The argument in support of this assignment is substantially as follows: That under the contract to reconstruct the dam in case it should be washed out, the appellants were entitled to a reasonable time in which to do the work, and that it was impossible to construct the dam during the spring months of 1909, and in time to collect and store water for the 1909 irrigation season, because the snows would have melted and the water would have been gone before they could have reasonably completed the dam. They rest the contention that the dam could not have been completed in time for that season on the evidence of the contractor to the effect that the ground was so muddy, and soft and boggy that he could not work it during the wet season. This contention is not well founded. The evidence of the contractor, as above set out, shows that the ground was wet and difficult to work, but that would naturally be true of such a piece of work at that season of the year, and such a condition could as well have been foreseen and anticipated at the time the contract was entered into as it could when it so happened that the work actually needed to be done. It may also be noted from the foregoing evidence of the contractor, that he quit the job more on account of the price he was getting for the work than because he could not do the work at all. He made up his mind at once that he could not afford to do that job of work at the contract price of 25 cents per yard, and he accordingly sent for one of his employers, who is one of the appellants herein, with a view to discussing the matter with him and having another agreement as to the price he should receive. There is no doubt in our minds from the record in this case but that the appellants could have had the work done in time to have collected the water for that season if they had been willing to pay the price necessary to

get the work done. The evidence was sufficient to go to the jury on this question.

Another question is raised by appellant to the effect that a part of the land seeded by respondent and for which he claimed water to irrigate was not the particular tract of land covered by the original contract, whereby appellants sold respondent a perpetual water right. That contract described a certain tract of land for which the water right was sold. This appears to have been a desert entry respondent had filed on, and it further appears that he subsequently changed his entry and included other lands not covered by the original entry. A part of the land seeded in 1909 was included in the additional lands covered by his new or amended desert entry. Appellants claim that they are not liable for any damages to that land sustained by respondent on account of their failure to supply water for that season. This contention is not well taken. They did not supply water for any of his land, and they did not offer to supply water for any of it and were not in a position to do so after failing to construct the dam. They had sold him a perpetual water right of 140 inches of water, or so much water as a fifteen-foot dam would store. The appellants contracted to furnish so much water. It could make no difference to them where that water was used so long as the use to which it was put did not require any greater volume of water or render their part of the contract any more onerous. The essence of the contract was the furnishing of 140 inches of water for a given number of acres of desert land.

Appellants devote considerable time to an argument as to the measure of damages to be adopted in a case of this kind. The court instructed the jury as follows:

"The jury are instructed that in case they shall find that because of the neglect and refusal of the defendants to rebuild the said dam as alleged in the complaint, that the plaintiff was deprived of water to irrigate his crops for the season of 1909, and the same were for the said reason a total loss, then you should find for the plaintiff the reasonable value

of the said crop at maturity, less the reasonable cost of irrigating, caring for and harvesting the same.''

It is contended by appellant that this was an action for destruction of growing crops, and that the court adopted an erroneous rule as to the measure of damages in such case. Counsel have cited a great number of authorities from other states as to the measure of damages for injury to or destruction of growing crops, but it would be unnecessary, if the question were here presented, for us to consider authorities from other states, for the reason that the rule applicable in such cases has been announced in this state. (*Risse v. Collins,* 12 Ida. 689, 87 Pac. 1006.) This, however, is not an action for damages to growing crops. It is an action for breach of contract, wherein the respondent sought to recover the damages sustained during the year 1909 by reason of the appellants failing and refusing to comply with their contract. We discover no material or substantial error in the instruction of the court on this subject. The thing to be determined by the jury was the amount of damages the respondent had sustained by reason of the appellants failing and refusing to live up to their contract, and which damage was the direct result of their breach of contract.

Other errors have been assigned, but they do not present anything which would require a reversal of the judgment or necessitate the judgment being in any way disturbed or modified.

Judgment is affirmed, with costs in favor of respondent.

Sullivan, J., concurs.